# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

WILLIAM SMITH,
    Petitioner,

Case No. 1:10-cv-673

Spiegel, J.

vs.

Litkovitz, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

    Petitioner, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition, respondent's return of

writ, and petitioner's reply. (Docs. 1, 8, 10).

## I.    FACTUAL BACKGROUND

    The Ohio Court of Appeals, Fourth Appellate District, provided the following summary

of the facts that led to petitioner's conviction and sentence:[1]

> Appellant is a widower, previously married to Gracie Smith. Ms. Smith died of
> cancer in 2005. By all accounts, appellant's behavior became increasingly bizarre
> after his wife's death. Appellant subsequently became romantically involved with
> Peggy Taylor, the wife of one of his stepsons. When she attempted to end their
> relationship, he held her at his house, against her will, and fired a gun next to her
> ear. Not surprisingly, this behavior did not endear appellant to Taylor, who
> eventually got free and ended their relationship.
>
> Appellant later asked one of his former stepsons, Leroy Preston Taylor, to locate a
> new woman for him. Mr. Taylor introduced him to Lynn Lucas, from whom
> appellant had sold marijuana to and from whom he had received "intercourse" and

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State
court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."
Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals'
factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v.
Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

a "blow job," but was not involved in a "relationship" with her.  Apparently, appellant and Lucas were a "couple" for several months.

John Duncan, Ms. Lucas's father, typically heard from his daughter every day. Over the weekend preceding February 5, 2007, however, he did not hear from her. Mr. Duncan called his son, John, and asked him to look in on his sister.  John Duncan found his sister at her home, in the bathroom, dead from what was made to appear to be a self-inflicted gunshot wound to her neck.  Appellant later confessed to his stepson that he shot Lynn Lucas and caused her to drop to the floor like "a bag of tatoes [sic]."

(Doc. 8, Ex. 18, pp. 3-4).

## II.    PROCEDURAL HISTORY

### State Trial and Appellate Court Proceedings

On October 2, 2007, the Highland County, Ohio grand jury returned an indictment charging petitioner with one count each of murder in violation of Ohio Rev. Code § 2903.02(A), voluntary manslaughter in violation of Ohio Rev. Code § 2903.03, abuse of a corpse in violation of Ohio Rev. Code § 2927.01(B), tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1), felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2), and kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3).  (Doc. 8, Ex. 1).  An arraignment entry was filed October 16, 2007, setting a trial date of December 6, 2007.  (Doc. 8, Ex. 2).  On December 3, 2007, petitioner filed a motion to vacate the trial date.  (Doc. 8, Ex. 3).  The trial court granted petitioner's motion on December 11, 2007 and ordered a motions hearing for January 14, 2008.  (Doc. 8, Ex. 4).  On January 15, 2008, upon motion by the State, the trial judge recused himself from the case and a new trial date was set for June 16, 2008.  (Doc. 8, Ex. 5 & 6).

On April 11, 2008, petitioner filed a motion to discharge defendant for violation of his speedy trial rights.  (Doc. 8, Ex. 7).  The state trial court denied petitioner's motion on July 15,

2

2008, finding that "any delay in bringing the defendant to trial is charged to the defendant for the reason that the defendant requested the continuance of the original trial date pursuant to R.C. 2945.72(H)." (Doc. 8, Ex. 11).

The case proceeded to trial. At the close of the prosecution's case, trial counsel moved the court to dismiss counts one, three, and four pursuant to Crim. R. 29. (Doc. 9, pp. 400-03). The trial court granted petitioner's motion to dismiss the abuse of a corpse charge, but permitted the remainder of the charges to go to the jury. *Id.* On July 17, 2008, petitioner was found guilty of murder, tampering with evidence, felonious assault, and kidnapping. (Doc. 8, Ex. 12). He received a total sentence of 28 years to life.[2] *Id.* at 2.

On August 14, 2008, petitioner filed a timely appeal to the Ohio Court of Appeals. (Doc. 8, Ex. 14). Petitioner raised six assignments of error:

1. Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution; *Strickland v. Washington* (1984), 466 U.S. 668; (Sentencing Hearing Tr. 6, 12).

2. The trial court committed plain error in failing to sever the murder, abuse of a corpse, and tampering with evidence counts regarding Lynn Lucas from the felonious assault and kidnapping counts regarding Peggy Taylor. As a result of the improper joinder of these counts for William Smith's trial, he was deprived of a fair trial and due process as guaranteed by the United States and Ohio Constitutions; Crim. R. 52.

3. The trial court erred and deprived William Smith of due process and a fair trial when it entered his judgments of conviction in the absence of sufficient evidence to establish guilt. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution; (Tr. 401-404; August 25, 2008 Amended Judgment Entry of Guilt and Ordering Confinement).

4. The trial court violated Mr. Smith's rights to due process and a fair trial

_____

[2] On August 25, 2008, the trial court entered an amended judgment entry that did not change the sentence imposed in its July 17, 2008 entry. (*See* Doc. 8, Ex. 13).

when it entered judgments of conviction for felonious assault, and kidnapping, which were against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution. (August 25, 2008 Amended Entry of Guilt and Ordering Confinement).

5.  The trial court erred and deprived William Smith of due process of law and a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution when it allowed improper expert opinion testimony.  (Tr. 205-210).

6.  The trial court violated Mr. Smith's substantive due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution when it required all of the terms imposed to be served consecutively.

(Doc. 8, Ex. 15).  On August 25, 2009, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the trial court's judgment.  (Doc. 8, Ex. 18).

## Ohio Supreme Court

On October 9, 2009, petitioner filed a timely appeal to the Ohio Supreme Court.  (Doc. 8,

Ex. 19).  In his memorandum in support of jurisdiction, petitioner asserted two propositions of

law:

I.  Trial counsel provides ineffective assistance, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to object to the prejudicial joinder of offenses in one trial and for failing to move to sever unrelated charges against different alleged victims.

II.  A trial court commits plain error and denies a defendant due process of law by allowing the State to prejudicially join unrelated offenses against different alleged victims in one trial.  Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.

(Doc. 8, Ex. 20).  On December 16, 2009, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal "as not involving any substantial constitutional question." (Doc. 8, Ex. 22).

**Application to Reopen Appeal**

Through new counsel, petitioner filed a Rule 26(B) application to reopen his appeal based

on appellate counsel's failure to raise the following claims on appeal:

> ASSIGNMENT OF ERROR ONE: THE TRIAL COURT COMMITTED
> PREJUDICIAL ERROR IN DENYING WILLIAM SMITH'S PRE-TRIAL
> MOTION FOR DISCHARGE WHEN THE ACCUSED DEMONSTRATES
> THAT THE STATE VIOLATED HIS SPEEDY TRIAL RIGHTS, CONTRA
> R.C. 2945.71-72, AND THE OHIO AND FEDERAL CONSTITUTIONS.
>
> ASSIGNMENT OF ERROR TWO:  STRUCTURAL ERROR OCCURS
> WHEN THE JURY RETURNS INCONSISTENT VERDICTS OF GUILTY
> TO MURDER, BUT NOT GUILTY TO VOLUNTARY MANSLAUGHTER
> ON THE IDENTICAL SET OF FACTS.  THE TRIAL COURT IS
> COLLATERALLY ESTOPPED FROM SENTENCING WILLIAM SMITH
> TO THE HOMICIDE RELATED CHARGES, SAID SENTENCE BEING
> CONTRA THE DOUBLE JEOPARDY PROVISION UNDER THE FIFTH,
> SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

(Doc. 8, Ex. 23).  On February 1, 2010, the Ohio appellate court denied petitioner's application

to reopen his appeal.  (Doc. 8, Ex. 25).  Petitioner did not appeal the decision to the Ohio

Supreme Court.

**Federal Habeas Corpus**

Through counsel, petitioner filed the instant federal habeas corpus action on September

29, 2010.  (Doc. 1).  Petitioner raises five grounds for relief:

> FIRST GROUND FOR RELIEF: INEFFECTIVE ASSISTANCE OF COUNSEL
> OCCURS IN VIOLATION OF THE SIXTH AND FOURTEENTH
> AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN TRIAL
> COUNSEL FAILS TO OBJECT TO PREJUDICIAL JOINDER OF OFFENSES
> IN ONE TRIAL, AND FOR FAILING TO MOVE TO SEVER UNRELATED
> CHARGES AGAINST DIFFERENT ALLEGED VICTIMS, CONTRA THE
> SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
>
> SECOND GROUND FOR RELIEF: A TRIAL COURT COMMITS PLAIN
> ERROR AND DENIES PETITIONER SMITH DUE PROCESS OF LAW BY
> ALLOWING THE PROSECUTION TO PREJUDICIALLY JOIN UNRELATED

5

OFFENSES AGAINST DIFFERENT ALLEGED VICTIMS IN ONE TRIAL, CONTRA THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

THIRD GROUND FOR RELIEF: STRUCTURAL ERROR OCCURS WHEN THE JURY RETURNS INCONSISTENT VERDICTS OF GUILTY TO MURDER, BUT NOT GUILTY TO VOLUNTARY MANSLAUGHTER ON THE IDENTICAL SET OF FACTS. THE TRIAL COURT IS COLLATERALLY ESTOPPED FROM SENTENCING WILLIAM SMITH TO THE HOMICIDE RELATED CHARGES, SAID SENTENCE BEING CONTRA THE DOUBLE JEOPARDY PROVISION UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

FOURTH GROUND FOR RELIEF: THE TRIAL COURT COMMITS PREJUDICIAL ERROR IN DENYING WILLIAM SMITH'S PRE-TRIAL MOTION FOR DISCHARGE WHEN THE ACCUSED DEMONSTRATES THAT THE STATE VIOLATED HIS CONSTITUTIONAL SPEEDY TRIAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

FIFTH GROUND FOR RELIEF: PETITIONER SMITH WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION WHEN COUNSEL ON DIRECT APPEAL FAILED TO RECOGNIZE STRUCTURAL ERROR REGARDING THE JURY VERDICTS, PLUS FAILED TO RAISE THE PRE-TRIAL DENIAL OF THE MOTION TO DISCHARGE ON THE RIGHT TO A SPEEDY TRIAL.

(Doc. 1, pp. 7-17).

Respondent opposes the habeas petition. (Doc. 8). In the return of writ, respondent

contends that Ground One is without merit and Grounds Two, Three, Four, and Five are

procedurally defaulted and waived. *Id.*

On December 27, 2010, in response to the return of writ, petitioner filed a motion to

expand the record. (Doc. 11). Petitioner sought to include as part of the record a sworn affidavit

of his attorney, explaining why he did not appeal the Ohio appellate court decision denying his

application to reopen. (Doc. 11, Exhibit 1). The affidavit indicated that counsel only learned of

the decision after calling the Fourth District Court of Appeals court administrator on May 3, 2010, and that counsel immediately informed the Ohio Supreme Court of the situation. *Id.* Counsel avers that the clerk informed him that under no circumstance would the Ohio Supreme Court accept a memorandum filed after the 45-day period. *Id.*

On June 23, 2011, the Court issued an Order granting petitioner's motion to expand the record "to the extent that the affidavit . . . will be included in the record for consideration by the Court if necessary for the proper adjudication of petitioner's claims for federal habeas relief." *Id.* at 2.

## III.    THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte:*

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington,* 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 132 S.Ct. 38, No. 10-637, 2011 WL 5335411, at *3-4 (U.S. Nov. 8, 2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, *supra,* 2011 WL 5335411, at *3, the Court explained:

> [W]e held last term in *Cullen v. Pinholster,* 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'"* *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127, 2011 WL 4530517 (U.S. Oct. 3, 2011) (No. 10-9911)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the

9

Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Ground One is without merit and Ground Two is procedurally defaulted.

In Ground One, petitioner claims that he received the ineffective assistance of trial counsel based on counsel's failure to object to the prejudicial joinder of offenses and to move for the severance of unrelated charges against different victims at trial. (Doc. 1, pp. 7-10). Petitioner argues that he was prejudiced by the joinder of charges pertaining to the murder of victim Lynn Lucas with the "entirely unrelated" felonious assault and kidnapping charges involving Peggy Taylor. *Id.* at 8. Petitioner contends that counsel's failure to object resulted in an unfair trial under the Sixth and Fourteenth Amendments. *Id.* at 7. In Ground Two, petitioner challenges the trial court's failure to address the joinder of unrelated offenses. *Id.* at 11-12.

Respondent contends that Ground One is without merit and that petitioner procedurally defaulted and waived the prejudicial joinder claim asserted in Ground Two. Specifically, respondent argues that Ground Two is barred from review because petitioner did not object at trial and the state appellate court relied on that state procedural bar in ruling that the error did not amount to plain error. (Doc. 8, pp. 11-12). Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990);

*Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly

present his constitutional claims through the requisite levels of state appellate review to the

state's highest court or commits some other procedural default that prevents a merit-based

review of the federal claims by the state's highest court, he may have waived the claims for

purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S.

255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v.

Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim

in the state court may preclude federal habeas review if the state court judgment rests on a state-

law ground that is both "independent" of the merits of the federal claim and an "adequate" basis

for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

fails to comply with a state procedural rule that required him to have done something at trial to

preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable
> to the petitioner's claim and that the petitioner failed to comply with the rule; (2)
> the court must determine whether the state courts actually enforced the state
> procedural sanction; (3) it must be decided whether the state procedural forfeiture
> is an adequate and independent state ground upon which the state can rely to

11

> foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris*, 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[3] In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell*, 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten*, 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds*, 546 U.S. 74 (2005) (per curiam); *Warner v. United States*, 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell*, 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in

---

[3] In *Harris*, the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris*, 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that

12

every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued in the return of writ, petitioner procedurally defaulted the claims raised in Ground Two by failing to object to the joinder of charges at trial. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy,* 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin,* 632 F.3d at 315.

---

the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

The Ohio Court of Appeals clearly enforced the state procedural bar by reviewing petitioner's assignment of error under plain error analysis. (*See* Doc. 8, Ex. 18, p. 13). As such, the state appellate court's plain-error review did not constitute a waiver of the state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000); *see also Goodwin*, 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same state procedural ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (when "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits"). *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830, 840 (6th Cir. 2003).

Therefore, the claim alleged in Ground Two of the petition is barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court. *See, e.g., Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray*, 477 U.S. at 485. As noted previously, petitioner argues that his trial counsel was ineffective for failing to object to the joinder of charges in Ground One of the petition. (Doc. 1, pp. 7-10). Ineffective assistance of counsel may constitute cause excusing a default unless the ineffective assistance of counsel claim was itself procedurally defaulted. *See Murray*, 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Therefore, in determining whether there is "cause" for petitioner's procedural default of his claims in Ground Two, the Court must examine petitioner's ineffective assistance of trial counsel claim as alleged in Ground One of the petition.

14

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to petitioner's ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984). In order to establish an ineffective assistance of counsel claim, petitioner must demonstrate that (1) his trial attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *See id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

The Ohio Court of Appeals was the last court to reach the merits of petitioner's ineffective assistance of counsel claims. The appellate court found that severance of the charges would not have altered the outcome of the trial and, therefore, that trial counsel was not constitutionally ineffective for failing to object:

> We now turn to appellant's first and second assignments of error that will be jointly considered in view of the fact that they raise related issues. The underlying premise for both assignments of error is that the charges against appellant should have been severed and tried in two separate proceedings – the homicide charges in one trial and the kidnapping and felonious assault charges in another. Appellant asserts that because trial counsel did not seek a Crim. R. 14 severance, he received ineffective assistance of counsel. Moreover, appellant argues it is plain error for the trial court not to have severed the charges sua sponte.

> We acknowledge that we do have concerns about the fact that those charges were not severed and were tried simultaneously. The crimes perpetrated against Peggy Taylor occurred approximately one year before Lynn Lucas' murder and there is no indication in the record that these events were part of a common scheme or plan. We also believe that appellant may have a legitimate concern that the evidence of his violence toward Taylor in 2006 could have influenced the jury to believe that he exhibited similar violent behavior a year later. Nevertheless, in light of the standard of review we must apply here, and considering the amount of evidence adduced at trial that implicated appellant, we do not believe any such error in this regard would constitute reversible error.

> To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. See Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed .2d 674, 104 S.Ct. 2052; also see State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904.

> Both prongs of the Strickland test need not be analyzed, however, if the claim can be resolved under just one. See State v. Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52. To establish the latter element (i.e. the existence of prejudice), a

16

defendant must establish that a reasonable probability exists that, but for counsel's alleged error, the result of the trial would have been different. State v. White (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.

With respect to appellant's claim that the trial court's failure to sua sponte sever the charges for trial constitutes plain error, we note that notice of plain error under Crim. R. 52(B) is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. More important, to find plain error we must be able to say that, but for the error, the outcome of the trial would have been otherwise. Id. at paragraph two of the syllabus; State v. Braden, 98 Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-1325, at ¶50; State v. Sanders (2001), 92 Ohio St.3d 245, 263, 750 N.E.2d 90.

In short, in order to reverse appellant's conviction in this matter under either of his two arguments, we would be required to conclude that the jury would not have found appellant guilty if the charges had been severed and tried separately. Unfortunately for appellant, we simply cannot draw that conclusion. Peggy Taylor gave sufficient testimony to support appellant's conviction for felonious assault and kidnapping. Insofar as her testimony may have influenced the jury on the murder charge, we also point to the testimony of appellant's stepson, Leroy Taylor, who related how appellant confided in him that he shot Lynn Lucas who dropped to the floor like "a bag of tatoes [sic]." This damaging evidence identified appellant as the perpetrator, but it was not the only evidence. The State also adduced testimony from several witnesses to the effect that some sort of struggle occurred at the Lucas home the day the decedent was murdered. Items were overturned, spent shell casings littered the floor and bullet holes appeared in various places. BCI agents Mark Losko and Travis Worse testified that the bullets recovered from other locations in the home tested positive for appellant's DNA.

In light of all of the evidence, we cannot conclude that the jury would have acquitted appellant if the charges had been severed and tried separately. Thus, while we agree the better practice would have been to try these matters in two separate proceedings, we are not persuaded that the failure to pursue that option was constitutionally ineffective assistance, nor do we believe the trial court's actions constitute plain error.

Accordingly for these reasons, we hereby overrule appellant's first and second assignments of error.

(Doc. 8, Ex. 18, pp. 11-14).

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law. The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably concluded that joinder of the charges did not alter the outcome of petitioner's trial in light of the substantial evidence supporting his convictions.

In support of the felonious assault and kidnapping convictions, the state offered the testimony of Peggy Taylor. Taylor testified that she had a very close relationship with petitioner, having known him for approximately thirty years and having helped take care of his wife prior to her death in February of 2005. (Doc. 9, pp. 99-105). Taylor further testified that she continued to look after petitioner following his wife's death and eventually moved into petitioner's home. *Id.* at 105-07. She indicated that during this time she developed an intimate relationship with petitioner, which she sought to end in February of 2006 in an effort to reconcile with her husband. *Id.* at 108- 111. Taylor testified that petitioner responded to her desire to end the relationship by producing a bottle of whiskey and a pistol. *Id.* at 112-113. He explained that he was going to kill himself when Taylor left the house. *Id.* Petitioner tried to rip Taylor's gown and eventually cut it with a knife, suggesting that she could explain his death by saying that he had tried to rape her and that he just could not live with himself. *Id.* at 113. Taylor testified that petitioner stated that he missed his wife so much that he wanted to die, before proceeding into a spare bedroom. *Id.* at 113-14. She testified that she remained in the living room because she was too afraid to follow him and that she heard a gun go off, but that petitioner was not hurt. *Id.* at 114.

Taylor further testified that she remained in the house from 2:00 a.m. until 9:00 a.m.. *Id.* She stated that she was afraid to call her husband for fear that petitioner would shoot himself or

18

her. *Id.* Petitioner informed her that if her husband did show up that he would find them both "dead on the living room floor." *Id.* at 115. She also indicated that when she attempted to leave, petitioner took her shoes or threw her purse down the hallway, away from the door. *Id.* Taylor testified that petitioner shot a gun right next to her ear and, at one point, held a gun to her head and asked "Peggy, are you ready?" repeatedly. *Id.* at 115-16. Petitioner reportedly fired his weapon several times during the incident. He asked Taylor if she was keeping count of the bullets he had fired and, after getting a second gun, stated "So, you don't know how many was in the first one, you don't know how many is in this one." *Id.* Taylor testified that by 9:00 a.m. petitioner had lined up all of his prescriptions in front of him. He stated that he was going to take all of the pills and warned that if she told anyone about the incident that he would shoot anyone that came to the door. *Id.* at 117.

With regard to the murder and tampering with evidence convictions pertaining to Lynn Lucas, the prosecution offered a number of witnesses in support of the charges. Lewis Duncan, Lynn Lucas's father, testified that on Monday, February 5, 2007, he called petitioner to see if he knew the whereabouts of his daughter. *Id.* at 137. According to Duncan, petitioner said that Lucas had called him on Friday, requesting that he come over to her house. *Id.* Petitioner indicated that he did not go to see Lucas because it was cold and that he feared that his plumbing would freeze. *Id.* Lewis Duncan subsequently called his son, John Duncan, who volunteered to go to Lucas's home to check on her. *Id.* at 138. John Duncan testified that he found his sister deceased on the floor of the master bathroom of her home, "laying in there between the wall and the commode and her head was back in the corner like she had slid down the corner of the wall and her chin was on her chest and she has a pistol placed in her left hand and it was laying kind

of across her stomach." *Id.* at 145. Both John Duncan and his father testified that Lynn Lucas was right handed. *Id.* at 139-40, 151.

Several witnesses offered testimony regarding the scene of the crime. Sergeant John Garrison testified that he observed dried blood on the door of the home and that the house was in disarray. *Id.* at 157-159. He noted that several items were on the kitchen floor, three bottles of opened alcohol were on the counter, and that .22 caliber rounds and bullet casings were found throughout the house. *Id.* Garrison further testified that the bedroom dresser had its two upper drawers pulled out and the drawers and their contents were thrown about the room, the TV had either been thrown into the bathroom door or had fallen off a shelf, the blinds were partially torn or crushed, and he observed a hole in the wall near the bathroom door. *Id.* at 158. Based on the "possible suspicious nature of the incident" he called his lieutenant, who subsequently testified that it appeared that there had been a struggle based on interior of home. *Id.* at 159, 260.

The prosecution also proffered testimony suggesting that the crime scene was inconsistent with the death having been a suicide. First, Eva Hall, a crime scene agent, testified that Lucas's grip of the gun was inconsistent with a suicide, *id.* at 208, and that she had never investigated a suicide committed with the non-dominant hand. *Id.* at 222-23. She also stated that the blood pattern on the victim's jeans led her to believe that the victim was fatally wounded while in a seated position and the fact that there was no blood spatter in the bathroom suggested that the victim was not fatally wounded in the location where she was found. *Id.* at 213. Hall also testified that the blood on the victim's stomach was very light with lines in it, as though someone had attempted to wipe blood from the victim's stomach. *Id.* at 209. Second, Dr. Lee Lehman, Chief Deputy Coroner for the Montgomery County Coroner's Office, testified that two patterns of blood stains on the victim indicated that the body had been moved; that the bullet

20

wound to the neck was unusual in a suicide; and on cross examination, that Lucas was not getting blood to her brain and would have lost consciousness immediately because of the location of the wound. *Id.* at 228- 29, 231-32, 237-38. The prosecution argued that this made it impossible for Lucas to have moved after the shooting. *See id.* at 241, 415-16. Forensic scientist Martin Lewis also testified that gunshot residue was found on Lucas's right hand, but not on her left. *Id.* at 345.

Chief Deputy Chuck Middleton, testified that he took a DNA swab from petitioner the following day. *Id.* at 247. He also took blood swabs from stains taken from throughout the house, including five holes in the floor of the bedroom and in the drywall where the hole in the wall was observed. *Id.* at 249-55. Travis Worse, a forensic scientist who processed the samples, testified that the DNA samples taken from bullets found in the house, a ring found in the home, blood on the master bedroom headboard, and blood in the hole in the bedroom all matched petitioner's DNA sample. *Id.* at 316-17. He also testified that he found blood stains on the inside pocket of Lucas's jeans that matched petitioner's DNA. *Id.* at 320-22.

Finally, Preston Taylor, petitioner's step-son, testified that petitioner came to his home that weekend and told him what had happened. *Id.* at 374-75. Though petitioner initially told him that he had been working on his furnace all weekend, Taylor testified that petitioner eventually stated that he shot Lucas and that "she just dropped like a sack of tatoes (sic)." *Id.* at 375, 382. According to Taylor, petitioner provided him with a set of keys to his house and garage "in case anything happened," indicating that he "was too old to do any time in jail or anything, and he was tired of his life and he just as soon be with mom." *Id.* at 376. Taylor testified that he understood petitioner to be implying that he was going to end his life. *Id.*

After a review of the entire record, the Court finds that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of the *Strickland* standard. While the Court shares concern with the Ohio Court of Appeals about the joinder of the charges in this case and recognizes the prosecution's apparent effort to use the two events to bolster its overall case,[4] the Court agrees with the Ohio appellate court that the joinder of the charges did not alter the outcome of petitioner's trial in light of the substantial independent evidence supporting his convictions. As the state appellate court reasonably concluded, the testimony of Peggy Taylor was independently sufficient to support petitioner's kidnapping and felonious assault convictions. Additionally, with regard to the murder and tampering with evidence convictions, petitioner has not demonstrated a reasonable probability that the joinder of charges altered the outcome of his trial in light of the substantial forensic evidence and the testimony of Preston Taylor. Petitioner has thus failed to demonstrate a reasonable probability of a different outcome had the charges been tried separately and, therefore, was not prejudiced by counsel's failure to object.

Accordingly, petitioner is not entitled to relief based on Grounds One and Two of the petition. Petitioner has procedurally defaulted Ground Two pursuant to Ohio's contemporaneous

---

[4]    During trial, it does appear that the prosecution attempted to use the incident involving Peggy Smith to support the charges pertaining to the death of Lynn Lucas. For example, in closing arguments the prosecutor inquired "now is it more than a coincidence that bullet holes were found in a bedroom on February 5th, February 6th, 2007 when Detective Middleton went out there?  And bullet holes were made over on Holiday Road in February of 2006." (Doc. 9, p. 417). The prosecution also noted that petitioner was "[t]he same Bill Smith who took a shot at Peggy just the year before. Which just happened to be a year after his wife died." *Id.* at 448. In addition, the state asked Preston Taylor if he discussed with petitioner "other events that may have occurred in the month of February over a period of years?" *Id.* at 377. In response, Taylor testified that he "kn[ew] about [petitioner] shooting at [Peggy Smith], around her, I don't know about shooting at her." *Id.* Taylor further testified that "I told [petitioner], you know, if you give the dates and everything, everything looks all coincidental, mom died February 2nd, 2005, Peggy was shot at around that month the following year, and then Lynn died the same day that my mom died." *Id.* at 378.

objection rule. Ground One of the petition is without merit and, therefore, cannot serve as cause to excuse the default of Ground Two.[5]

**B.      Grounds Three, Four, and Five are procedurally defaulted and, in the alternative, are without merit.**

In Ground Three, petitioner contends that his sentence violates the Double Jeopardy provision of the Fifth Amendment because the jury convicted him of murder but not voluntary manslaughter, despite the charges involving identical conduct. (Doc. 1, p. 13). Petitioner claims that "[w]hen the jury acquitted Petitioner Smith of Voluntary Manslaughter, they likewise acquitted him of Murder, since it is legally impossible to acquit, but find guilt under the identical set of circumstances." *Id.* He argues that by accepting the murder conviction, the trial court "improperly directed a verdict, committing structural error under *Arizona v. Fulminate*, 499 U.S. 279; 111 S.Ct. 1246 (1991)." *Id.* at 14. In Ground Four, petitioner argues that the trial court committed prejudicial error by denying his pre-trial motion for discharge based on the violation of his speedy trial rights. *Id.* at 14. In Ground Five, petitioner contends that his appellate counsel was ineffective for failing to raise the underlying claims asserted in Grounds Three and Four on appeal. *Id.* at 16.

Petitioner has procedurally defaulted the claims raised in Grounds Three and Four by failing to raise the claims on direct appeal and on further review to the Ohio Supreme Court.

---

[5]  The Court also finds that petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally defaulted claims are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In this case, petitioner has not offered any new evidence that was not offered at trial or otherwise demonstrated that he is actually innocent. *See Schlup,* 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

The fact that petitioner raised the claims in connection with his application to reopen also did not preserve the merits of the claims for habeas review. "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, because petitioner failed to provide Ohio's highest court with an opportunity to correct the alleged constitutional errors, he has waived these claims for purposes of federal habeas corpus review in the absence of a showing by him of "cause" for his default and "actual prejudice" as a result of the alleged errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice."[6] *See Coleman*, 501 U.S. at 750. *See also Murray*, 477 U.S. at 485; *Isaac*, 456 U.S. at 129; *Sykes*, 433 U.S. at 87.

In Ground Five of his petition, petitioner contends that he received the ineffective assistance of appellate counsel based on appellate counsel's failure to raise the defaulted claims on appeal. (Doc. 1, pp. 16-17). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray*, 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In this case, petitioner procedurally defaulted his ineffective assistance of appellate counsel claim by failing to appeal the denial of his application to reopen to the Ohio Supreme Court. *See, e.g., Hubbard v. Warden*, No. 1:09-cv-550, 2010 WL 3931500, at *4 (S.D. Ohio Sept. 7, 2010) (Report and Recommendation), *adopted*, 2010 WL 3958739 (S.D. Ohio Oct. 4, 2010); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 944 (S.D. Ohio 2009); *Crawford v. Mack*, No. C-1-03-690, 2006 WL

---

[6] As the Court has noted, *supra* n.5, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his defaulted claims are not considered.

508732, at *4 (S.D. Ohio Mar. 2, 2006).

As noted previously, counsel for petitioner indicates that petitioner was unable to appeal the denial of his application to reopen because "[c]ounsel for Petitioner Smith in his 26(B) Application never received notice of the final decision of February 1, 2010. Counsel represents he never received notice until after the 45 day rule of the Ohio Supreme Court, and was jurisdictionally estopped from filing a Jurisdictional Motion." (Doc. 1, p. 4). However, even assuming without deciding that petitioner can establish cause to overcome the procedural default of his ineffective assistance of appellate counsel claim, petitioner is not entitled to habeas relief because his ineffective assistance of appellate counsel claims are without merit.

The Ohio Court of Appeals was the last state court to issue a reasoned decision on the merits of petitioner's claims. In denying his 26(B) application, the state appellate court found that his ineffective assistance of appellate counsel claims were without merit:

> In his first proposed assignment of error, appellant argues that his appellate counsel should have challenged the trial court's failure to grant his motion to dismiss for a speedy trial deadline violation. First, he contends that the State wrongly opposed his motion to dismiss, by relying on State v. Palmer (1998), 84 Ohio St.3d 103, 702 N.E.2d. 72. Palmer provides that speedy trial time is tolled from the date "the accused files a motion challenging his or her competency to stand trial." (Emphasis added.) Id. at paragraph one of the syllabus. Appellant argues that Palmer does not apply here because he did not file the motion to evaluate his competency, but rather the State filed the motion. This, however, is a distinction without substance.

> Although we agree that Palmer involved an accused's motion, and perhaps the case was not the best authority on which to rely, we are not persuaded that the trial court erred. Palmer notwithstanding, R.C. 2945.37(B) expressly allows a prosecutor to raise the issue of a defendant's competency to stand trial. R.C. 2945.72(B) tolls the running of the speedy trial time for any period during which the accused's "mental competency to stand trial is being determined." Nothing in the statute restricts the tolling provision to such motions filed only by an accused. Had the Ohio General Assembly intended to apply this tolling provision solely to defense competency motions, it could have written the statute in that manner.

> Appellant also challenges the trial court's reliance on a continuance motion that

25

he filed earlier in the proceedings. Although he concedes that he filed the motion, he cites an attached affidavit from trial counsel who attests that he did not intend to waive the speedy trial time and, in any event, was asked by the trial court to file the motion. In our view, neither attestation aids his position.

R.C. 2945.72(H) expressly states that speedy trial time is tolled for "[t]he period of any continuance granted on the accused's own motion." The statute says nothing about requiring trial counsel to make an express waiver, nor does it carve out an exception for cases in which a court allegedly "asks" counsel to file the motion. Further, if trial counsel did not intend to waive speedy trial rights, or believed that asking for a continuance would prejudice appellant's rights, appellant and counsel should not have filed the motion. Obviously, requests for continuances are routinely made in order to further develop and fully understand various aspects of a case and to better prepare for trial. In other words, a continuance may benefit to the accused's efforts to prepare for trial.

Appellant's application also sets forth an alternative argument to counter a "possible assertion the state could make" to salvage the speedy trial ruling.[2] Given that we find nothing amiss with the trial court's ruling on that issue, we need not, and do not, address this argument. For these reasons, we find no merit in the appellant's first proposed assignment of error.

> [2] This alternative argument dealt with alleged improprieties in the bill of particulars.

Appellant's second proposed assignment of error points to an alleged "structural" error in the verdicts. The jury returned a verdict of guilty on the murder charge and "not guilty" on the involuntary manslaughter charge. Because voluntary manslaughter is an offense of inferior degree to murder, see State v. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272, appellant argues that the Double Jeopardy Clause bars his conviction for murder after he was acquitted of voluntary manslaughter. We find no merit to this argument.[3]

> [3] Appellant explicitly argues in this proposed assignment of error that the "structural" error violates his "Double Jeopardy" rights from the "Fifth, Sixth and Fourteenth Amendments to the Constitution." (Emphasis added.) Although we agree that the Fifth Amendment protects him from being "twice put in jeopardy" for the same offense, and further agree that this protection has been incorporated into the Due Process Clause of the Fourteenth Amendment, see Benton v. Maryland (1969), 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707, we question his reference to the Sixth Amendment.

First, appellant cites State v. Duncan, 154 Ohio App.3d 254, 796 N.E.2d 1006, 2003-Ohio-4695, wherein the court reversed convictions for murder and voluntary manslaughter and held (1) that someone cannot be conviction for both murder and

voluntary manslaughter with respect to the same act, and (2) the trial court erred in giving instructions that allowed the jury to make such a finding. Id. at ¶¶ 24, 28-29. By contrast, in the case sub judice the jury did not return guilty verdicts for both crimes. Furthermore, the trial court did not give the type of instruction that was given in Duncan. Portions of the trial transcript attached to appellant's application reveal that the trial court advised the jury that it could not "find the defendant guilty of both murder and voluntary manslaughter." It is obvious that what accounted for this alleged "structural" error is that the jury interpreted the trial court's instructions too literally. The jury apparently found none of the other elements of voluntary manslaughter (e.g. passion, sudden fit of rage, etc.) and proceeded to find him "not guilty" of that offense, but found him guilty of murder.

Additionally, this particular issue was not raised in the trial court when the jury was present and when the trial court could have addressed the matter. Accordingly, it is hereby waived. See State v. Williams (1977), 51 Ohio St.2d 112, 117, 364 N.E.2d 1364.

Finally, we repeat the admonition that the State sets out in its memorandum opposing the reopening of appeal. Constitutionally "effective" appellate advocacy does not require that in an appeal every conceivable issue be raised. Counsel's failure to raise meritless claims does not constitute ineffective assistance. State v. Nitenson (Feb. 24, 1994), Highland App. No. 91CA796. To the contrary, the process of winnowing out weak arguments on appeal, and focusing on those most likely to prevail, is the hallmark of effective appellate advocacy. Smith v. Murray (1986), 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434; Jones v. Barnes (1983), 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987.

Therefore, we conclude that in the case sub judice appellant's application sets forth no substantive grounds for relief and we are not persuaded that any "genuine issue" exist as to whether he was deprived of the effective assistance of appellate counsel as specified in App.R. 26(B).

(Doc. 8, Ex. 25, pp. 3-8).

After review of the record in this case, the Court finds that the Ohio Court of Appeals'

decision was neither contrary to nor an unreasonable application of federal law. The appellate

court correctly identified *Strickland* as the controlling Supreme Court precedent and reasonably

determined that appellate counsel was not ineffective for failing to raise the underlying speedy

trial and double jeopardy claims because neither claim was meritorious and petitioner was not

prejudiced by counsel's failure to raise such claims.

### i.  *Speedy Trial*

With regard to petitioner's speedy trial claim, the Court initially notes that petitioner's claim is premised on an interpretation of Ohio law.  It is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975)).  The highest court of the state is the final arbiter of the state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law."  *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (applying *West* standard in federal habeas case).  "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *West,* 311 U.S. at 237 (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks,* 485 U.S. at 630 n.3); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

In the instant case, the Ohio appellate court determined that Ohio Rev. Code § 2945.72(H) tolls the speedy trial time for "[t]he period of any continuance granted on the accused's own motion" and that Ohio Rev. Code § 2945.72(B) tolls the running of the speedy trial time for any period during which the accused's "mental competency to stand trial is being determined."  *Id.*  Despite petitioner's contention that the Ohio Supreme Court decision in *State v. Palmer*, 702 N.E.2d 72 (1998), is inapplicable because the *accused* in *Palmer* requested the evaluation while the State filed the motion in the instant case, the Ohio Court of Appeals found

28

the distinction to be without substance. The *Palmer* Court noted that "[t]he express language of R.C. 2945.72(B) is broadly worded to include any period in which the accused's mental competency is being determined," *id.* at 74, and the appellate court here reasonably found that "[h]ad the Ohio General Assembly intended to apply this tolling provision solely to defense competency motions, it could have written the statute in that manner." (Doc. 8, Ex. 25, p. 4). *See also State v. Sanabria*, No. C-020052, 2002, WL 1769441, at *1 (Ohio App. 1 Dist. Aug. 2, 2002) ("We can discern no intent on the part of the [*Palmer*] court to interpret the tolling statute in such a way that competency evaluations or treatment initiated by the state-or on the court's own motion-do not suspend the time within which the accused must be brought to trial."). Petitioner has not cited any authority that convinces the undersigned that the Ohio Supreme Court would decide the tolling issue otherwise and, accordingly, this federal Court is bound by the state court's considered judgment on the tolling issue. *Hicks*, 485 U.S. at 300, n.3; *West*, 311 U.S. at 237. The state appellate court's determination that appellate counsel was not ineffective for not raising the underlying speedy trial claim is neither contrary to nor an unreasonable application of clearly established federal law as set forth in *Strickland*.

The fact that the Ohio Court of Appeals did not assess the underlying speedy trial claim by reference to the Supreme Court standard enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972), does not alter the Court's finding. In *Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011), the Sixth Circuit recently held that AEDPA deference applies even where the Ohio Court of Appeals does not specifically explain that it is ruling on the merits of a Sixth Amendment speedy trial claim and, instead, bases its ruling on the Ohio speedy trial statute. *See id.* at 329. In reaching its decision, Sixth Circuit reasoned that AEDPA does not require a state court to strictly apply the relevant federal standard, as long as the test applied is not contrary to or substantially different

29

from the relevant Supreme Court precedent. *Id.* at 330. Furthermore, the court noted that Ohio courts consider the state speedy trial statute to be coextensive with the Sixth Amendment and determined that "Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270-day limit, is not 'substantially different' from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner." *Id.* "Thus, any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*." *Id.* at 331. After determining that the state court adjudicated the merits of the Sixth Amendment claim, the Sixth Circuit then reviewed the state court's analysis to determine whether the court had unreasonably applied the *Barker* standard in that case. *See id.* at 332-38.

In this case, as in *Brown*, the Ohio appellate court's ruling was not an unreasonable application of federal law. In *Barker,* the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Barker*, 407 U.S. at 530; *see also United States v. Marion,* 404 U.S. 307, 320-21 (1971); *Cain v. Smith,* 686 F.2d 374, 381 (6th Cir. 1982) (and Supreme Court cases cited therein). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530; *see also Doggett v. United States,* 505 U.S. 647, 651 (1992).

"[T]o trigger a speedy trial analysis" under this four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold

dividing ordinary from 'presumptively prejudicial' delay." *Doggett,* 505 U.S. at 651-52; *Barker,* 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (quoting *Doggett,* 505 U.S. at 652). While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n.1; *Maples,* 427 F.3d at 1026, those of a lesser duration are not per se excessive. *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial). *See also United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive); *Wilcher v. Rose*, 85 F.3d 630 (6th Cir. 1996) (unpublished), 1996 WL 262951, at *1 (ten-and-one-half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

In this case, petitioner was arrested on September 12, 2007 and brought to trial on July 16, 2008, 308 days or approximately ten months later. (*See* Doc. 8, Ex. 8 p. 4, & Ex. 9, p. 2; Doc. 9, Transcript p. 1). However, in determining the length of the delay, only the periods of delay attributable to the government or court are counted. *See Howard*, 218 F.3d at 564 (citing *Barker*, 407 U.S. at 529; *White*, 985 F.2d at 275). Here, petitioner contributed to the delay of his trial by filing a motion to vacate the trial dates originally set for December 6 and 7, 2007. (Doc. 8, Ex. 3). The trial court granted his motion, vacating the trial dates and setting the matter for motions on January 14, 2008. (Doc. 8, Ex. 4). In addition, petitioner filed a motion to discharge based on a violation of his speedy trial rights on April 11, 2008, which was denied on May 29, 2008. (Doc. 8, Ex. 7 & Ex. 11). Taking into account the combined delay attributable to

31

petitioner's motions,[7] the relevant period of delay for assessing petitioner's speedy trial claim is 221 days, or approximately seven-and-one-half months. Such a delay is not presumptively prejudicial. *See United States v. Brown*, 498 F.3d. 523, 530 (6th Cir. 2007) (noting that a ten-month delay "is likely right at the line to trigger an analysis of the remaining [*Barker*] factors"); *United States v. McPherson*, No. 2:08-cr-38, 2009 WL 2146360, at \*3 (E.D. Tenn. July 14, 2009) (delay of nine months does not "approach" one year so as to trigger presumption of prejudice); *see also United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (finding that a nine month delay is not uncommonly long and is insufficient to warrant further consideration of the remaining *Barker* factors); *United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002) (eight-month-and-three-week delay was not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (delay of eight months is not presumptively prejudicial). Accordingly, petitioner's Sixth Amendment speedy trial claim necessarily fails and the Ohio Court of Appeals did not unreasonably apply the *Barker* standard in denying petitioner relief.

Even assuming that the delay in this case is presumptively prejudicial, an examination of the remaining *Barker* factors further demonstrates that no federal constitutional speedy trial violation occurred in this case. Although petitioner did assert his speedy trial right during the state trial proceedings and this factor therefore weighs in his favor, the balance of the *Barker* factors weighs against him. Most significantly, petitioner has not made any showing of how he was prejudiced by the delay. Petitioner has not alleged, much less demonstrated, any impairment to his defense, nor that any witness became unavailable or that any other evidence was lost because of the delay. *See Barker*, 407 U.S. at 532. Petitioner has likewise failed to demonstrate prejudice on account of abnormal anxiety or oppressive pre-trial incarceration. *See id.*

---

[7] Petitioner's motion to vacate the trial dates and motion to discharge accounted for delays of 39 and 48 days, respectfully.

Furthermore, the delay alleged by petitioner is generally insufficient to demonstrate prejudice. *See United States v. Schreane*, 331 F.3d 548, 559 (6th Cir. 2003) (collecting cases and noting that "[w]hen prejudice has been found, the government's delay has typically been shockingly long") (citing *Doggett*, 505 U.S. at 657 (six years); *Brown*, 169 F.3d at 351 (five and one-half years); *United States v. Graham*, 128 F. 3d 372, 376 (6th Cir. 1997) (eight years)).

Finally, the Court finds that the contested delay was justifiable in this case. Petitioner has argued that "the reason for the delay was the Prosecutor's improper use of alleged exceptions to the Speedy Trial Rule," (Doc. 1, p. 15), apparently referring to the state's motions to evaluate petitioner's competency. (*See* Doc. 10, p. 19). However, there is no evidence in the record to suggest that the prosecution was motivated by bad faith or intentionally or negligently delayed the trial in an effort to harm the defense or seek a tactical advantage. *See Schreane*, 331 F.3d at 553-54. To the contrary, the Court finds that the prosecution's desire to ensure that plaintiff was competent to stand trial was a valid reason to be weighed in favor of the State. *See id.* at 554 ("A 'valid reason' for a delay . . . weighs in favor of the government.") (citing *Barker*, 407 U.S. at 531); *see also United States v. Sutcliffe*, 505 F.3d 944, 957 (9th Cir. 2007) (delay due to competency proceedings were deemed necessary in the interest of justice).

The Court finds that the Ohio Court of Appeals' decision regarding petitioner's speedy trial claim was not an unreasonable application of federal law. Because the undersigned is not convinced that the Ohio Supreme Court would decide the tolling issue differently under Ohio law, the Court is bound by the state court's considered judgment on the issue. Furthermore, the Ohio court's determination that petitioner's speedy trial claim is without merit is neither contrary to nor an unreasonable application of the Supreme Court standard set forth in *Barker*.

### ii. *Double Jeopardy*

In Ground Three of the petition, petitioner also contends that because the jury acquitted him of voluntary manslaughter, a crime that is "identical" to that of murder except for the mitigating factor of provocation, it was "legally impossible" to find him guilty on the murder charge. (Doc. 10, p. 14). Petitioner's double jeopardy claim is likewise based on an interpretation of Ohio law.

The Ohio Court of Appeals determined that petitioner's double jeopardy claim was without merit. The Ohio Supreme Court has held that voluntary manslaughter is not a lesser-included offense of murder, but an inferior degree. *State v. Shane*, 590 N.E.2d 272, 274 (Ohio 1992). "[A]n offense is an 'inferior degree' of the indicted offense where its elements are *identical* to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case." *State v. Dean*, 533 N.E.2d 294, 298 (Ohio 1988) (emphasis in original). Therefore, voluntary manslaughter "permits a defendant to mitigate a charge of . . . murder to manslaughter if the defendant establishes the mitigating circumstances of sudden passion or a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force." *State v. Benge*, 661 N.E.2d 1019, 1025 (Ohio 1996).

In this case, the trial court instructed the jury that it "may not find the defendant guilty of both murder and voluntary manslaughter," (Doc. 9, p. 467), and the jury did not return guilty verdicts on both charges. Furthermore, as noted above, murder and voluntary manslaughter do not include identical elements and it is, therefore, not "legally impossible" for the jury to find petitioner guilty of murder and not guilty of involuntary manslaughter, as petitioner argues. As the Ohio Court of Appeals reasoned, the jury apparently found that petitioner had not established

34

a mitigating circumstance of sudden passion or rage sufficient to incite petitioner to use deadly force in order to find petitioner guilty of voluntary manslaughter. *See Benge*, 661 N.E.2d at 1025. Therefore, petitioner's acquittal on the voluntary manslaughter charge did not preclude a finding of guilt on the murder charge.

### iii. Ineffective Assistance of Appellate Counsel

The Court finds that petitioner's double jeopardy and speedy trial claims, raised as Grounds Three and Four respectively, are without merit. Because these underlying claims are without merit, the Ohio Court of Appeals reasonably determined that petitioner's appellate counsel was not constitutionally ineffective for failing to raise the meritless claims. *See Davie,* 547 F.3d at 312 ("if the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal"); *Willis*, 351 F.3d at 745 ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit") (citation omitted). Therefore, petitioner is not entitled to relief on Ground Five of the petition and cannot rely on the ineffective assistance of appellate counsel claim as cause to excuse the procedural default of Grounds Three and Four.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied. Ground One of the petition is without merit and Ground Two is procedurally defaulted and waived. Grounds Three, Four, and Five are also procedurally defaulted and, in the alternative, are without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

35

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling. In addition, a certificate of appealability should not issue with respect to the claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack*, 529 U.S. at 475 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).


Date:  *12/28/2011*                    Karen L. Litkovitz
                                       United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM SMITH,
    Petitioner,

    vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:10-cv-673

Spiegel, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).